UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

              -against-                                  **REPORT AND RECOMMENDATION**

SELWYN STANLEY,

                                                                                             09-CR-141 (NGG)

                Defendant.
-------------------------------------------------------X

A P P E A R A N C E S:

Benton J. Campbell
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
       *By Soumya Dayananda*
         *Assistant United States Attorney*

Steven L. Brounstein, Esq.
Papa, DePaola, and Brounstein
42-40 Bell Blvd. Suite 500
Bayside, New York 11361
       *Attorney for Defendant*

**AZRACK**, **United States Magistrate Judge:**

       Defendant Selwyn Stanley is charged with conspiracy to import and distribute cocaine. (Dkt. No. 8.) On June 11, 2009, he moved to suppress two pre-trial identifications arguing that they were unduly suggestive. (Dkt. No. 18.) On August 10, 2009, the Honorable Nicholas G. Garaufis, United States District Judge, granted a hearing and referred the motion to me for Report and Recommendation ("R&R"). (Dkt. No. 23.) On September 14, 2009, I held a hearing and heard testimony from Special Agent Gerald Handley, the Immigration and Customs Enforcement agent who conducted both identification procedures. (Dkt. No. 26.) The

1

identifying witnesses did not testify. On October 14, 2009, the parties submitted supplemental briefing and the defendant made an additional request for a second hearing to determine the admissibility of in-court identifications by the same witnesses. (Dkt. No. 29–30.) For the reasons discussed below, I respectfully recommend that the Court deny the defendant's motion to suppress and request for an additional hearing.

## I. BACKGROUND

On March 12, 2009, Selwyn Stanley ("Stanley" or "defendant") was indicted for conspiracy to import and distribute cocaine. (Dkt. No. 8.) The Government alleges that Stanley and his girlfriend, Sharon Cole ("Cole"), recruited Shanya Kirk ("Kirk") and another unnamed individual ("CW2") to courier drugs between Guyana and John F. Kennedy ("JFK") Airport.

The events leading up to the defendant's arrest began with the arrest of Kirk on August 26, 2004. Special Agent Gerald Handley of Immigration and Customs Enforcement ("ICE") arrested Kirk at JFK Airport for attempting to smuggle approximately 2.5 kilograms of cocaine from Guyana into the United States. (Hr'g Tr. 4, Sept. 14, 2009.) At the time of her arrest, Kirk had a piece of paper in her pocket with the name "Selly" and a phone number written on it. She informed ICE that she had been instructed to deliver the drugs to "Selly" upon her return to New York. (Tr. 6.) On October 28, 2004, during an interview with Agent Handley, Kirk stated that before her outbound flight to Guyana, she had stayed with Cole, whom she identified from a photographic array, and that she had been driven to the airport by Cole and the man known to her only as "Selly." (Tr. 5.) Kirk described "Selly" as a tall black male with dred locks who drove a green Ford Taurus. (Id.) Agent Handley attempted to identify "Selly" by investigating the phone number and vehicle information provided by Kirk, but his initial efforts were unsuccessful and he abandoned his attempt at that point. (Tr. 7–8.)

On January 5, 2006, ICE agents arrested Cole and searched her apartment. (Tr. 8.) Among the items seized were three color photographs (collectively Hr'g Ex. 1[1]) depicting Cole and various other individuals. (Tr. 9.) The first photograph depicts a black male whose identity Agent Handley could not recall during the hearing. (Tr. 10.) Cole identified the black male depicted in the second photograph as the defendant and the individuals depicted in the third photograph as herself and her brother Shawn. (Id.) This was the first point at which investigators obtained the defendant's full name. (Tr. 27.) Though Cole identified Stanley, she stated that he had no role in the courier scheme. (Tr. 11–12.)

Cole was subsequently indicted and her trial was set to commence on September 26, 2006. (Tr. 12.) Kirk was scheduled to testify against Cole and met with Agent Handley two or three days before the trial to prepare her testimony. (Id.) During that preparation session, Agent Handley placed all three photographs seized from Cole's apartment before Kirk at the same time and asked her if she recognized any of the individuals depicted. (Tr. 12–13.) He did not inquire about "Selly" specifically. (Tr. 43.) Kirk identified Cole and the defendant. (Tr. 12–13, 19.) She did not recognize anyone else. (Tr. 19.) At Cole's trial, the prosecutor showed Kirk an enlargement of the Stanley photograph seized from Cole's apartment. (Tr. 13, 20; Hr'g Ex. 2.) Kirk identified Stanley as Cole's boyfriend and stated that he drove her from Brooklyn to JFK Airport for her outbound flight to Guyana. (Tr. 20.) At a later point, she reported to investigators that she had also spent one to two days with Stanley before her trip to Guyana. (Gov't's Post-Hr'g Br. at 7 n.1.)

Cole was convicted at trial. After the trial, Agent Handley continued his investigation into the defendant. (Tr. 20.) After reviewing travel records, he identified another woman, CW2, who had travelled to Guyana with Cole in November 2004. (Tr. 21.) Agent Handley

---

[1] For ease of reference, a copy of Hr'g Ex. 1 is attached to this R&R.

3

interviewed CW2 in October 2007 at her apartment. (Id.) CW2 stated that Cole and Stanley, whom she identified only as "Selly," had recruited her to serve as a courier, but that she got scared and did not bring any drugs back to New York. (Id.; Tr. 48) After her return from Guyana, she spoke to Stanley over the phone and saw him two or three times in person. (Tr. 22.) Agent Handley did not show CW2 any photographs at this initial meeting. (Tr. 49.) A few weeks after that interview, he returned to CW2's apartment and showed her a photo array containing six numbered headshots of the defendant and five other men. (Tr. 22–23; 49.) The array was constructed by an ICE intelligence analyst who obtained Stanley's photograph from an immigration database and emailed the array to Agent Handley. (Tr. 23–24.) Agent Handley could not recall the exact date on which he showed CW2 the array because he failed to record the date. However, based on the November 2007 date stamp at the bottom of the array, which indicates the date on which the analyst emailed it to him, he believes he showed the array in late 2007 or early 2008. (Id.)

All of the men in the photo array, including the defendant, were black males of similar age with similar facial hair and dred locks and they were all dressed in casual street clothes. (Hr'g Ex. 3.[2]) The defendant's photograph was placed in the first position. Upon presenting CW2 with the array, Agent Handley asked her if any of the six individuals looked familiar and to circle the photograph of anyone she recognized. (Tr. 26) He told her to keep in mind that people may change their hairstyles and facial hair. (Id.) CW2 circled the defendant's photograph and wrote on the array that he had "asked [her] to make a drug trip." (Id.; Hr'g Ex. 3) In January 2008, Cole viewed an unmarked copy of the same array and also identified the first photograph as that of the defendant. (Tr. 26.) The defendant was subsequently arrested in February 2009. (Id.)

---

[2] For ease of reference, a redacted copy of Hr'g Ex. 3 is attached to this R&R.

4

## II. DISCUSSION

Stanley now moves to suppress the Kirk and CW2 identifications. Under Federal Rule of Evidence 801(d)(1)(C), evidence of a prior identification is generally admissible at trial. United States v. DiTommaso, 817 F.2d 201, 213 (2d Cir. 1987). However, a defendant has a constitutional due process right against a "very substantial likelihood of misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972) (emphasis added). Thus, a prior identification is admissible unless it was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." DiTommaso, 817 F.2d at 213 (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)) (internal quotation marks omitted); see also United States v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991). Moreover, even if the prior identification was unduly suggestive, the same witness may be permitted to identify the defendant during the trial if he or she has an independently reliable basis for identification. United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994). "[R]eliability is the linchpin in determining the admissibility of identification testimony" and should be assessed in light of the "totality of the circumstances." Manson v. Brathwaite, 432 U.S. 98, 114, 106 (1977).

### A. The Kirk Single-Photo Identification:

Stanley argues that the Court should suppress Kirk's identification because it was based on a single photograph and was therefore inherently unreliable.[3] Single-photo identifications are generally disfavored as unduly suggestive. United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992). However, the Supreme Court has made clear that "each case must be considered on its own facts," Simmons v. United States, 390 U.S. 377, 384 (1968), and single-photo identifications are admissible if used under non-suggestive or exigent circumstances. See, e.g.,

---

[3] Though Kirk was shown three photographs rather than one, the Government has not contested the defendant's characterization of the procedure as a single-photo identification.

5

Layton v. Philips, No. 08-pr-1288, 2009 WL 2043640 (2d Cir. Jul. 15, 2009); United States v. Shodeinde, 108 F.3d 1370 (2d Cir. 1997) (table). Considering the totality of the circumstances here, Kirk's identification was not unduly suggestive or likely to result in misidentification.

Kirk identified Stanley under circumstances materially different from the typical single-photo identification in which the police have a suspect in mind and show a witness a photograph of that person in the hopes of confirming their theory. Such procedures are condemned because they tend to suggest the answer to the witness and are therefore likely to result in misidentification. In this case, however, Kirk's identification was unprompted. Agent Handley credibly testified that Stanley was not a target of his investigation and that he was not looking for a specific response regarding Stanley at the time Kirk identified him in September 2006. Agent Handley knew from a prior interview of Kirk, that a person named "Selly" had been involved in the importation scheme and Cole had previously identified the defendant from the photograph as her boyfriend Selwin Stanley. However, Agent Handley had abandoned his investigation of Stanley in 2004 after his initial attempts to identify him had failed. Moreover, there is no evidence that Kirk believed that the Government was targeting anyone other than Cole at the time she identified Stanley.[4] Thus, the Kirk identification was not vulnerable to the defects that have led courts to condemn traditional single-photo identifications.

---

[4] Contrary to defendant's assertion, the evidence does not indicate that "throughout the meeting with [Kirk], [Agent Handley] is talking about the activities of this person named Selly." (Def'd's Post Hr'g Br. at 7.) As indicated in the section of the transcript cited by defendant, Agent Handley testified that during the Kirk identification, his focus was Cole and that he had spoken to Kirk about "Selly" on prior occasions:

> Q: Did you show -- you showed her the photographs; is that correct?
> A: I put the three of them in front of her.
> Q: Before this had occurred, you had discussed this individual named Selly with her; is that correct?
> A: Yes.
> Q: On a couple of different occasions; is that correct?
> A: Yes.

(Tr. 43:3–10.)

Moreover, nothing about the photograph itself or the manner in which it was presented was unduly suggestive. Agent Handley showed Kirk all three photographs at the same time, rather than singly, further eliminating much of the suggestiveness inherent in a true single-photo identification. He asked Kirk if she recognized any of the individuals, rather than asking specifically if "Selly" was among them. The photographs were ordinary personal snapshots in civilian settings, as opposed to mug shots or surveillance photos, which are likely to cause a witness to associate the individual with the crime. Additionally, the photos included depictions of two other black males who were not participants in the courier scheme. Notably, Stanley was depicted by himself, not with Cole. This is significant because Kirk knew, prior to making the identification, that Cole and Stanley were a couple and one of the three photographs depicted Cole sitting on a motorcycle with a black male. Thus, there was no danger of suggestion or misidentification based on association with Cole. Indeed, the pairing of Cole with another man is likely to have made it more difficult for Kirk to identify Stanley. Also, unlike the typically improper situation in which a bystander is asked to identify an otherwise-unknown perpetrator based solely on observation at the time of the crime, Kirk was a co-conspirator and had spent one to two days with the defendant prior to the identification.

Stanley also argues that the Government's failure to adequately memorialize what occurred during the identification and failure to preserve the original photograph shown to Kirk creates a presumption of undue suggestion. It is surprising that someone of Agent Handley's years of experience was not more meticulous and certainly the better practice is to memorialize and preserve the identifications to the greatest extent possible. However, it is well-settled that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v.

7

Youngblood, 488 U.S. 51, 58 (1988); Sales v. Harris, 675 F.2d 532, 538 n.3 (2d Cir. 1982); United States v. Williams, 575 F.2d 388, 393 (2d Cir. 1978). Here, Agent Handley testified credibly and provided enough details to establish that no suggestive conduct took place. Since the defendant has failed to establish bad faith or show that the original would support his contention of undue suggestive and the Government produced color copies that fairly and adequately represent the photographs shown to the witness, there is no basis to suppress the identification due to unavailability of the originals. See, e.g., Velazquez v. Poole, 614 F. Supp. 2d 284, 329 (E.D.N.Y. 2007) (Pollack, M.J.); Young v. Superintendent, Upstate Correctional Facility, No. 00-CV-8178, 2001 WL 1488598, at *7 (S.D.N.Y. Oct. 29, 2001).

Considering the totality of these circumstances, Kirk's identification was free from undue suggestion and was not likely to result in misidentification. Therefore, I respectfully recommend that the Court deny Stanley's motion to suppress the Kirk identification.

**B. The CW2 Photo Array**:

Stanley next argues that the array shown to CW2 was unduly suggestive because Stanley's photograph had a different color background than the other photos in the array and because it was placed in the first position. To determine whether a photographic array is unduly suggestive, courts consider factors such as the size of the array, the manner of presentation by the officers, and the contents of the array. See Thai, 29 F.3d at 808. "[T]he principal question is whether the picture of the accused . . . so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." Concepcion, 983 F.2d at 377 (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984)).

Considering these factors, the array presented to CW2 was not suggestive. Agent Handley used six photographs, which has been approved in this Circuit. See United States v. Bennett, 409 F. 2d 888, 898 (2d Cir. 1969). All of the individuals in the array, including the defendant, were black males of comparable age and reasonably similar appearances. They all had dred locks and mustaches and were dressed in street clothes. All six photographs were the same size. The background in Stanley's photograph was, as defendant points out, a different color from the other photographs. However, all of the backgrounds were reasonably similar and the law does "not require[] that all of the photographs in the array be uniform with respect to a given characteristic." See Jarrett v. Headly, 802 F.2d 34, 40-41 (2d Cir. 1986) (citations omitted). Moreover, the difference in background colors did not place undue focus on Stanley because the filler backgrounds were not all uniform either. Photographs three and four have a significantly lighter background than photographs two, five and six. Additionally, the backgrounds in photographs two and six are speckled, whereas the background in photograph five is opaque. Thus, in light of the variety of backgrounds, the difference in Stanley's photograph is not noticeable and does not make Stanley stand out as the culprit.

Nor does the positioning of Stanley's photograph render the array defective. Stanley cites no authority and offers no logical argument in support of the proposition that position one is more suggestive than any other position in the array and such arrays have been upheld by prior federal courts. See, e.g., United States v. Anderson, 156 Fed. Appx. 218, 220 (11th Cir. Nov. 29, 2005); United States v. Saenz, 286 Fed. Appx. 166, 169 (5th Cir. Jul. 15, 2008); United States v. Holt, No. CRIM-04-69, 2005 WL 2807169, at *6 (W.D. Pa Oct. 27, 2005); see also United States v. Carter, 410 F.3d 942, 949 (7th Cir. 2005) ("[I]f the bottom-center position is an

inherently pronounced position . . . then every photo array with a suspect pictured in the bottom-center position could be unduly suggestive. We see no basis for such a rule.")

As with the Kirk identification, Stanley also argues that the CW2 identification is presumptively suggestive because the Government failed to memorialize and preserve the original array. However, Agent Handley provided credible testimony about the circumstances of the array; the Government submitted an adequate color copy that, according to Agent Handley's credible testimony, fairly and accurately represents the array that was shown to CW2; and there is no evidence that the Government lost or destroyed the original in bad faith. Therefore, I respectfully recommend that the Court deny Stanley's motion to suppress the CW2 identification.

C. **In-court Identification**:

In addition to moving for suppression of the pre-trial identifications, Stanley requests an additional hearing to challenge potential in-court identifications by Kirk and CW2. Since the pre-trial procedures were not unduly suggestive, there is no need for further inquiry. United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1973). However, if the Court finds that the pre-trial procedures were indeed suggestive, it must then determine whether Kirk and CW2 have independently reliable bases upon which to make in-court identifications. Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). Here, the Court need not hold another hearing to make this determination because Agent Handley has already provided testimony sufficient to establish the admissibility of in-court identifications. All of Stanley's objections to the witnesses' ability to observe the defendant go to weight rather than admissibility.

In assessing reliability, courts consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness'

prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199–200; see also Concepcion, 983 F.2d at 377. "A good or poor rating with respect to any one of these factors will generally not be dispositive, and in each case, the question of independent reliability must be assessed in light of the totality of the circumstances." Raheem, 257 F.3d at 135 (citations omitted).

Here, both Kirk and CW2 have reliable grounds, independent from their pre-trial identifications, upon which to identify Stanley in court. After she was recruited to be a courier, Kirk spent one or two days with the defendant and then rode in his car as he drove her to the airport. Kirk also provided an accurate description of Stanley prior to identifying him and she did not hesitate or waver in identifying him upon seeing his photograph. CW2 had also been recruited to make a drug trip by the defendant and estimated that she had seen him a total of two to three times prior to viewing the array. As even brief glimpses and short conversations may support a finding of independent reliability, see, e.g., United States v. Wong, 40 F.3d 1347, 1360 (2d Cir. 1994) (two to three second observation sufficient for identification), the Government has met the standards for admissibility and there is no need for a further hearing. Therefore, I respectfully recommend that the Court deny defendant's request for a further hearing and permit Kirk and CW2 to make in-court identifications.

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court deny the defendant's motion to suppress the pre-trial identifications made by Shanya Kirk and CW2 and deny the defendant's motion for a hearing to determine whether the witnesses should be permitted to make in-court identifications.

Any objections to this R&R must be filed by ECF within ten (10) days of the date of entry of this R&R. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1).

SO ORDERED.

Dated: December 1, 2009
       Brooklyn, New York

                                       /s/
                               JOAN M. AZRACK
                               UNITED STATES MAGISTRATE JUDGE



# NY/NJ HIDTA
## PHOTOGRAPHIC LINE-UP ADMONITION



1 (circled)   2   3
4   5   6

You will be asked to look at a group of photographs. The fact that the photos are shown to you should not influence your judgement in any not conclude nor guess that the photographs contain the picture of the person who committed the crime. You do not have to identify anyone important to free innocent persons from suspicion as to identify guilty parties. Keep in mind hair styles, beards and moustaches are easily c not indicate to other witnesses that you have or have not made an identification.

I, _____, Address: ___

do identify photo # 1 to be the subject who asked me to make a drug trip

Viewer Signature: _____    Officer Signature: _____

Incident Number _____    Date: _____    Time: _____

https://204.154.208.41/...UniversalReport.aspx    11/14/2007

